**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3204
_____

PAMELA WHITE, as Administratrix ad prosequendum of the ESTATE of PHILLIP
WHITE, Deceased; IYONNA HANNAH; TAMYRA DOWNING, GAURDIAN FOR
T.H., A MINOR

v.

CITY OF VINELAND; VINELAND POLICE CHIEF TIMOTHY CODISPOTI, in his
individual capacity; LOUIS PLATANIA; RICHARD JANASIAK; JOHN DOES 1
through 10, individually and/or in their official capacities, jointly, severally, and/or in the
alternative

Pamela White, as Administratrix Ad Prosequendum of the
Estate of Phillip White,
                                                              Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-16-cv-08308)
District Judge:  Honorable Joshua D. Wolson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 9, 2024

Before: MATEY, MONTGOMERY-REEVES, and ROTH, *Circuit Judges*.

(Opinion filed: November 7, 2024)

---

OPINION[*]

---

MONTGOMERY-REEVES, *Circuit Judge.*

In 2015, Phillip White tragically died while in police custody. His estate ("the Estate")[1] filed a civil action against the City of Vineland (the "City"); two City police officers, Louis Platania and Richard Janasiak; and the City's police chief, Timothy Codispoti (collectively, "Appellees"). Post-trial, a jury returned a verdict in favor of Appellees on all counts. In this appeal, the Estate seeks a new trial based on purported improper statements made by the City's counsel, erroneous admission of evidence, and incorrect jury instructions. Because the Estate fails to identify any reversible error, we will affirm the District Court's judgment.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] White's mother, acting as Administratrix *Ad Prosequendum* of the Estate, and two of White's children (collectively, "Plaintiffs") filed the original action. When the District Court ruled on summary judgment, it permitted Plaintiffs' claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act (the "NJCRA") to proceed to trial but granted Appellees' motion for summary judgment on Plaintiffs' other claims, including Plaintiffs' claims under New Jersey's wrongful-death and survivorship statutes. After trial, the District Court ruled that White's children do not have standing to bring claims under § 1983 and the NJCRA. The children did not appeal that order. Thus, the Estate is the only Plaintiff remaining on appeal.

## I.    BACKGROUND

In 2015, Platania and Janasiak detained White while responding to a police call.

During the encounter, Platania took White to the ground and sicced a police dog on him.[2]

White died on the way to the hospital.

The Estate filed claims under § 1983 and the NJCRA against Appellees,

contending that they violated White's rights under the United States Constitution and

New Jersey state law.  At trial, the jury returned a verdict for Appellees on all counts.

The Estate appealed.

## II.    DISCUSSION[3]

The Estate argues that it is entitled to a new trial for three reasons: (1) the City's

counsel purportedly made improper comments to the jury; (2) the jury saw—and experts

testified about—an autopsy report that the District Court did not enter into evidence; and

---

[2]  The Parties diverge in their characterization of the incident.  We need not resolve these factual disputes to decide the issues raised in this appeal, which concern only events at trial.

[3]  The District Court had jurisdiction over this case under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  Typically, this Court reviews improper comments, curative instructions, and jury instruction sufficiency under the deferential abuse of discretion standard.  *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 399 (3d Cir. 2016) (citing *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 206 (3d Cir. 1992)) (applying abuse of discretion standard of review to District Court's assessment of allegedly improper comments); *Edwards v. City of Philadelphia*, 860 F.2d 568, 574 (3d Cir. 1988) ("The decision of whether, and in what manner to give a curative instruction . . . is committed to the sound discretion of the district court and, absent an abuse of that discretion, will not be disturbed upon review."); *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 361 (3d Cir. 1999) (This Court "review[s] the District Court's decisions regarding jury instructions for abuse of discretion." (citing *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 191 (3d Cir.1990))).

(3) the jury instructions for the excessive-force claim purportedly were insufficient. We address each point in turn.

### A. Improper Comments

The Estate argues that the City's counsel made three types of improper comments during trial. Specifically, the Estate claims that the City's counsel improperly (1) suggested that a liability verdict in this civil action was tantamount to finding Platania guilty of criminal murder; (2) mentioned the prosecutor's office's investigation of the involved police officers, which did not result in criminal charges; and (3) questioned the authenticity of video footage even though counsel already stipulated that the footage was authentic. But these comments, taken individually or together, do not warrant a new trial. *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 399 (3d Cir. 2016) ("Counsel's conduct constitutes reversible error only where . . . improper statements . . . so pervaded the trial as to render the verdict a product of prejudice." (cleaned up)).

First, *the Estate's* counsel referenced criminal liability during trial, commenting about "murder" in its opening argument, App. 320, introducing testimony that a witness "thought that [he] witnessed a murder," App. 524, and reminding the jury during closing argument that "[w]ithout any coaching, every witness said they witnessed a murder," App. 2115. The Estate cannot complain about the City passing through a door that the Estate opened and walked through itself. Moreover, the Estate never sought an instruction as to the mentions of murder, including during discussions of the burden-of-proof jury instruction. And, in any event, the District Court correctly instructed the jury regarding the appropriate burden of proof for civil liability. As such, the Estate fails to

4

show that it is entitled to a new trial based on the City's Counsel's passing references to murder.

Second, although the City mentioned the prosecutor's office and its investigation of Platania despite the District Court's direction not to, the District Court instructed the jury that "[a]lthough statements taken in those investigations might be relevant, the investigations themselves and their outcome are not relevant, and you should not concern yourself with the result of any particular investigation." App. 2089. The Estate did not object to this instruction and fails on appeal to convincingly explain why it was inadequate. As such, the Estate fails to show that it is entitled to a new trial based on the City's passing references to the criminal investigation of Platania.[4]

Third and finally, while the City backtracked on its stipulation that a video of Williams's arrest was authentic by questioning whether audio on the video was dubbed, the District Court instructed the jury to "assume as you consider the evidence in this case that the defense has agreed that this video is the video that [the witness] filmed with his cell phone." App. 1295. Again, the Estate offers no convincing challenge to this instruction. And we see no reason to order a new trial based on this passing comment by the City's counsel.

---

[4] Also, like the prior point, the Estate opened the door to discussing the criminal investigation. For example, during its opening statement, the Estate raised the prosecutor's decision not to fingerprint Platania's gun and belt, which invited rebuttal testimony from an investigator on why this tactical decision was made. On another occasion, the City played portions of a witness's interview with the prosecutor's office to impeach testimony elicited by the Estate, not to offer evidence that the investigation purportedly cleared Platania of criminal wrongdoing.

5

In the end, the Estate fails to convince us that any of these purportedly improper comments so pervaded the trial as to render the verdict a product of prejudice. And that remains true even if we consider the cumulative effect that these comments may have had on the jury. Further, in each instance, the District Court provided jury instructions that rendered any impropriety harmless. *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop., Inc.*, 89 F.4th 430, 446 (3d Cir. 2023) (holding that the District Court's instruction to "not consider" excluded evidence was sufficient to "render[] any impropriety harmless," and "[b]ecause we presume jurors follow curative instruction, we see no basis here for disturbing the jury's verdict" (internal citations and quotations omitted)). Thus, we see no reversible error.

## B.    Autopsy Report

The Estate next argues that the jury should not have seen—and expert witnesses should not have testified about—White's autopsy report because the report was hearsay and the City failed to lay a proper foundation to admit the report as a record of a regularly conducted activity under Federal Rule of Evidence 803(6).

Before trial, the City filed a motion in limine to admit the autopsy report. The motion attached a certificate from the medical examiner stating that he conducted the autopsy, prepared the autopsy report during the regular course of his business activities, and certified that the report was authentic. At this stage, the Estate did not object to the admissibility of the autopsy report for any reason. The District Court granted the City's motion in limine to admit the autopsy report, "subject to laying an appropriate foundation, pursuant to the hearsay exceptions for the records of a regularly conducted

6

activity and public records." Supp. App. 12. At trial, the District Court and the parties "understood" that the City would call the medical examiner to testify. App. 123. Based on this understanding, the District Court allowed the Parties to display the autopsy report during their opening arguments, and the Parties reviewed the report with the jury during opening arguments. Both sides also used the report while questioning the medical experts. But the City never called the medical examiner to lay a foundation for the report, and the District Court did not admit the report into evidence.

The Estate argues that the jury should not have seen the autopsy report during opening arguments because the District Court never admitted the report into evidence, and that the District Court's instruction was insufficient to cure that purported mistake. While the District Court did not give the jury the exact instruction the Estate requested, the District Court nonetheless instructed jurors that "[t]he evidence from which [they] [were] to find the facts consist[ed] of . . . the testimony of the witnesses," "documents and other things received as exhibits," "facts that are stipulated," and "facts that are judicially noticed." App. 2087. The District Court also instructed the jury that it could not rely on "materials that a lawyer or witness referenced but that [the District Court did] not admit[] into evidence, *including reports of the medical examiner*." App. 2087 (emphasis added). Thus, the District Court instructed the jury that it could not consider the medical examiner's reports. As such, even if the District Court erred in allowing the jury to see the autopsy report during opening arguments, the Estate fails to show

7

reversible error in this jury instruction, and we presume that jurors follow instructions.[5]

*See Winn-Dixie Stores, Inc.*, 89 F.4th at 446.

The Estate also argues that the experts improperly focused their testimony on the autopsy report. But as the District Court acknowledged, Rule 703 allowed the medical experts to refer to the report. And the Estate fails to show reversible error.

### C. Jury Instructions Regarding Excessive Force

Finally, the Estate argues that the jury instructions regarding the excessive force claim were insufficient. According to the Estate, the District Court failed to instruct the jury to conduct a separate reasonableness analysis for Platania's decision to take White to the ground.[6] We disagree. While the instruction did not name each point the jury should apply the reasonableness analysis to, it instructed the jury to consider whether the force was unreasonable at any given point: "[Y]ou must ask whether the amount of force [Platania] used *at one or more points* during the encounter was the amount which a reasonable officer would have used in conducting the stop or making the arrest under similar circumstances." App. 2099 (emphasis added). Thus, the Estate fails to show reversible error in this jury instruction. *Sys. Inc. v. Bridge Elecs. Co.*, 335 F.2d 465, 467

---

[5] The same logic applies to the Estate's suggestion that expert witnesses offered inadmissible hearsay by referencing facts from the autopsy report. The District Court instructed the jury to disregard occasions when a witness referenced evidence—like the autopsy report—that the District Court did not admit into evidence. And the Estate fails to persuasively explain why that instruction was inadequate.

[6] "[T]he objective reasonableness analysis must be conducted separately for each search or seizure that is alleged to be unconstitutional." *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017).

(3d Cir. 1964) (holding that jury instructions that "correctly and adequately" cover the subject matter are sufficient).

## III. CONCLUSION

For the reasons discussed above, we will affirm the District Court's judgment.